IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SHARRON LEFAY, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**WILLIAM CHARLES LEFAY, et al.,**<br><br>Defendants. | 1:13-cv-01362 AWI MJS HC<br><br>**ORDER MODIFYING SCHEDULING ORDER TO ALLOW LATE DISCLOSURE OF EXPERTS AND ORDER DENYING MOTION TO COMPEL**<br><br>**(ECF Nos. 38-40)** |

I. **INTRODUCTION**

This is a 42 U.S.C. § 1983 civil rights action, with multiple supplemental state law claims, arising out of Defendants' actions in seeking and obtaining a medical commitment of Sharron LeFay against her will under California Welfare and Institutions Code § 5150. (See generally, 1st Am. Compl., ECF No. 17.) Plaintiffs Sharron LeFay and her sons, Jeff Wall and Scott Wall, seek monetary damages from Sharron LeFay's estranged husband, Defendant William LeFay, and from the City of Fresno and various named Fresno police officers who were involved in investigating matters giving rise to the commitment and the commitment itself. (Id.) Sharron LeFay also seeks equitable relief to, in effect, expunge the record of her commitment. (Id. at 11-12.)

This action was initiated in this Court on August 24, 2013. (Compl., ECF No. 1.) A First Amended Complaint was filed February 22, 2014. (ECF No. 17.) All parties have

1 been served and appeared. Plaintiff's Sharron LeFay and her two sons are represented by attorney Kevin Little. Defendant William Le Fay is represented by attorney J. David Petrie. Defendant City of Fresno and Defendant police officers are represented by attorneys Erica Camarena and Tamara Bogosian.

A Scheduling Conference was held on December 13, 2013, and on December 16, 2013, a Scheduling Order was issued directing the parties to disclose expert witnesses on or before July 18, 2014, with supplementation, if any, of the disclosures to be made on or before August 18, 2014. (Sched. Order, ECF No. 15.) The parties were ordered to complete all discovery by September 19, 2014. (Id.)

Upon stipulation of the parties, the Court extended the expert designation date to August 18, 2014, and the supplemental designation deadline to September 1, 2014. (Order, ECF No. 30.) A pretrial conference remains scheduled for January 7, 2015, and a nine day jury trial is set to begin February 17, 2014. (Sched. Order.)

Reportedly, Plaintiffs fully complied with the expert disclosure requirements. Defendants did not. They timely identified their expert witnesses in accordance with the Court's Order, but they did not provide reports of those experts as required by Fed. R. Civ. P. 26(a)(2).[1]

Specifically, Plaintiffs' counsel identified Darrel York as a police practices expert and served Mr. York's Curriculum Vitae and written report on Defendants' counsel on August 18, 2014. Counsel for Defendant City of Fresno timely designated Joe Callanan as a police practices expert and Dwight Sievert, M.D., as a psychiatric expert. However service of the reports of these two experts was not made until August 29, 2014, and September 17, 2014, respectively. Defendant William LeFay timely designated a psychiatrist, Howard Terrell, M.D., but to date has not submitted a report from Dr. Terrell.

Plaintiffs objected to Defendants' failure to fully comply with Rule 26(a)(2). Defendants then requested, and on September 8, 2014, the Court held, a Telephonic

---

[1] All further references to "Rule" shall refer to the Federal Rules of Civil Procedure, unless otherwise designated.

2

1  Discovery Dispute Conference in which all parties discussed and debated the reasons
2  for and effect of Defendants failure to provide expert reports. (See ECF No. 36.) Plaintiffs
3  sought relief. The matter was not resolved in the informal conference.  Instead, the Court
4  authorized the filing of appropriate motions for relief. (Id.) On September 19, 2014,
5  Defendants filed three separate motions. Defendants, the City of Fresno and police
6  officers Gleim, Gomez, Vandeursen, and Panabaker (collectively, the "City"), and
7  Defendant William LeFay separately moved for an order modifying the Scheduling Order
8  to allow additional time for expert disclosure and discovery of Defendant's experts. (Mot.,
9  ECF No. 38, 40.) Plaintiffs' opposition to such motions was filed October 9, 2014. (Opp'n,
10 ECF No. 45.)  Defendants filed replies to the opposition on October 17, 2014. (ECF Nos.
11 46-47.) The matter was argued October 24, 2014. It is now ready for resolution.

12 In addition to the motions to amend the scheduling order, the City filed a motion to
13 compel Plaintiffs' discovery responses, but noted that if the dispute was not resolved, it
14 would provide supporting briefing before the October 24, 2014 hearing date. (ECF No.
15 39.) Defendant City did not provide further briefing or raise issues regarding Plaintiffs'
16 discovery responses at the hearing. As the matter was not properly raised and argued
17 before the Court, the Court is not able to address the issues raised in the motion. The
18 Motion to Compel is hereby DENIED without prejudice.

19 **II.     THE PARTIES' FACTUAL CONTENTIONS**

20 The essential elements of the parties' primary factual claims in support of and
21 opposition to the instant motions may be summarized as follows:

22     **A.    The City's Factual Claims**

23 Defendants attribute their failure to fully disclose experts by the designated
24 deadline to delays by Plaintiffs.

25 Specifically the City argues it was not in a position to obtain and produce Dr.
26 Sievert's report until it had secured all of Sharron LeFay's medical records and then
27 deposed her and forwarded the results to Dr. Sievert for his review. (Memo. P&A at 7-8,
28 ECF No. 38-2) It points out that the mental health facilities where Ms. LeFay was seen in

connection with the subject of the emergency psychiatric detention hold under Cal. Welf. & Inst. Code § 5150 would not produce her records without a signature from Ms. LeFay on the facility's own release form. (Id.) That release was not signed and provided until March 14, 2014, and not accepted by the medical facility (and the records not provided) until August, 2014. (Id. at 4.)

Counsel for the City notes she expressed concern about the foregoing delays in a July 9, 2014, telephonic discovery dispute conference with the Court and, based thereon, secured an extension of the expert disclosure deadline from July 18, 2014, to August 18, 2014. (Memo. P&A at 4.) Since she made it clear that the City sought the extension to ensure it would have relevant records and have deposed knowledgeable witnesses before the expert designation deadline, it was necessarily understood that securing the records and taking the depositions would have to predate the expert designation. Because the formal extended deadline approached and passed without that discovery having been completed, she "understood" the designation deadline would not be strictly construed, at least insofar as providing written reports from the experts.

The City then attributes continuing delays in deposing Ms. LeFay to Plaintiffs' counsel's scheduling unavailability. The City notes Plaintiffs' counsel was available only one day in July and one day in August prior to the designation deadline, and the deposition was not begun until September 4, 2014. (Camarena Decl. at ¶ 4, ECF No. 38-1.)

Further, the City blames its failure to produce Mr. Callanan's report on delay in securing records from the Sacramento sheriff's office relating to Plaintiffs Jeff and Scott Wall. The Walls are both Sacramento sheriff office employees who allegedly: were critical of the actions of the Fresno police during the dispute between Sharron Lefay, their mother, and William Lefay, their stepfather; used their professional positions to try to influence the actions of the Fresno police and others in the case; and, had their jobs and reputations negatively impacted by retaliatory actions taken by Fresno police. The City sought discovery of the Walls' internal affairs flies to investigate these issues before

4

1  taking their depositions.  The City also wanted its police practices expert to review them
2  and the depositions in order to evaluate the propriety of the Wall's actions and their
3  criticism of Fresno police actions.

4  The Walls were not deposed until after the August 18, 2014, extended expert
5  designation deadline.

### B. William LeFay's Factual Claims

Counsel for William LeFay submits an exceedingly detailed chronology of his attempts to conduct discovery in this case. The chronology focuses on counsel's January 13, 2014, subpoenas of Ms. LeFay's medical records and failure to receive complete responses to them until August 2014.  (ECF No. 40-1 at 2-13.) Defense counsel attributes the delay to alleged foot-dragging by Plaintiffs' counsel and Plaintiffs' objection to producing, and interference with the production of, medical records to Ms. LeFay. Similar problems reportedly were experienced in setting and taking the depositions of each of the Plaintiffs.

In short, counsel for Mr. LeFay argues that he needed all of Ms. LeFays' medical records, and those relating to the examination of her at the time of the psychiatric hold in particular, for his expert, Dr. Terrell, to consider in forming and reporting his opinions. The record production was not complete until August 12, 2014, i.e., less than a week before the designation deadline.

Dr. Terrell also needed to consider the deposition testimony of Ms. LeFay.  Her deposition was not begun until September 4, 2014, and as of the date of briefing this motion, had not been concluded

### C. Plaintiffs' Responses

Plaintiffs do not really dispute that there have been obstacles and some delays in this case, which they at least impliedly attribute to the unique interrelationships of the parties (and the fact Sharron and William LeFay are now embroiled in a contested marital dissolution and property division action in state court).   However, Plaintiffs' counsel argues:

1) that Defendants themselves delayed instituting discovery relative to these issues until June 2014 and delayed requesting supplemental discovery responses;

2) that the discovery obstacles which generated the delays of which Defendants complain predated the discovery extension which was given because of, and to compensate for, those delays;

3) that Defendants have had possession of the mental health records and sworn statement of Ms. LeFay necessary to inform their medical experts since before the case began;

4) that Defendants did not seek to take Ms. LeFay's deposition (which they now claim was essential to their expert) until after the designation deadline; and

5) that the Walls had stipulated that there is nothing in their Internal Affairs files relating to this case and that they will not offer expert testimony, so there is no need for defense experts to rebut their testimony.

**D.   Defendants' Reply:**

1) Defendants did not delay, but instead spent the early months of this very complex case investigating it in preparation for taking depositions;

2) The long history of discovery disputes pushed back the discovery necessary for the expert designations and the designations themselves;

3) Though a City police investigator did obtain many, but not necessarily all, of Ms. LeFay's medical records informally and with her consent before the litigation was filed, her counsel's withdrawal of that consent meant that the City could not share that material with its experts or others without risk of violating Ms. LeFay's health information privacy rights under HIPAA, and so it did not do so. Counsel for William LeFay confirms that he did not in fact have access to the crucial medical records until a few short days before the expert designation deadline. Further, Ms. LeFay's early voluntary statement was wholly uninformative and unproductive given her distressed state of mind at the time it was given; and

4) It was clear Defendants could not properly, and would not, take Ms.

LeFay's deposition until all relevant medical records were produced and she was made available for deposition.

### III. **APPLICABLE LAW**

This Court's December 16, 2013, Scheduling Order directed the parties to file written designations of experts in accordance with Rule 26(a)(2)(A) and (B), to include all information required under those rules, and to do so on or before July 18, 2014. (ECF No. 15.) The deadline later was extended to August 18, 2014. (ECF No. 30.) The parties were warned that failure to comply with that direction and the applicable deadline could result in exclusion of their expert opinion evidence. (ECF No. 15 at 2.)

As is conceded and described above, the Defendants did not fully comply with the terms of the Scheduling Order and Federal Rule.

Rule 37(c)(1) provides, in effect, that where a party fails to comply with the witness disclosure requirements of Rule 26, he or she may not use the witness to supply evidence at trial, hearing or motion unless the failure to comply "was substantially justified or is harmless". See also Yeti by Molly v. Deckers Outdoor Corp., 259 F.3d. 1101, 1106 (9th Cir. 2001). The burden is on the party who failed to comply to prove substantial justification or harmlessness. Id. at 1107.

"Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." Lanard Toys, Ltd. v. Novelty, Inc., 375 Fed. App'x 705, 713 (9th Cir. 2010) (citing David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003)).

In making this analysis and determination, the Court is to consider: 1) the public's interest in expeditious resolution of litigation; 2) the public policy favoring disposition of cases on their merits; 3) the Court's need to manage its docket; 4) the risk of prejudice to an opposing party; and, 5) the availability of sanctions less drastic than witness or

1  evidence preclusion. See Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997)
2  (citing Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990)).

3  Defendant William LeFay directs the parties' and the Court's attention to Rule
4  16(b)'s provision for modification of a scheduling order for good cause and with the
5  consent of the Court.  The Court reads Rule 16 and the related authorities cited by Mr.
6  LeFay to be directed more appropriately toward a request for modification of a
7  scheduling deadline before the deadline passes.  Rule 37's specific provisions for relief
8  from a failure to disclose are more appropriately considered here. See Fed. R. Civ. P.
9  37(c).

10  Plaintiffs' counsel refers us to Hogan v. Robinson, 2007 U.S. Dist. LEXIS 39555
11  (E.D. Cal. 2007) (affirmed on reconsideration by Hogan v. Robinson, 2007 U.S. Dist.
12  LEXIS 39555 (E.D. Cal. 2007) (O'Neill, J., presiding)), in which the Honorable Lawrence
13  J. O'Neill, U.S. District Judge of this Court, affirmed the decision to preclude evidence
14  from a not-properly disclosed expert on the ground that prejudice to the opposing parties
15  was unavoidable and undeniable where a late disclosed expert would have had the
16  benefit of reviewing the opposing experts' already-disclosed opinions and shaping expert
17  opinions to respond. Plaintiffs note, correctly, that the Hogan decision should be given
18  considerable weight by this court since it was issued by a fellow judge from this very
19  district and on the same issue. Plaintiffs cite a long line of supporting authority to this
20  end. (See, ECF No. 45 at 5.)

21  **IV.   ANALYSIS**

22  The Court, having carefully considered the relevant pleadings and argument of
23  counsel, finds on the basis thereof that to the extent any prejudice might otherwise have
24  resulted from Defendants' failure to timely disclose experts, it may be remedied by the
25  provisions of this Order so as to render the failure harmless. Accordingly, to the extent
26  and in the manner provided here, the Court grants Defendants' motions to amend the
27  Scheduling Order.

28  Addressing the factors set forth in Lanard Toys and Wendt, above:

8

The Court finds that inasmuch as the pretrial conference is still some two months away and trial more than three months away, granting a modification of the expert disclosure deadline will not disrupt the Court's docket and should not delay or disrupt trial.

The law always favors disposition of cases on their merits. See, e.g., Dreith v. Nu Image, Inc., 648 F.3d 779, 788 (9th Cir. 2011). The Court wants to see both sides present to the finder of fact all relevant and material evidence not foreclosed by other rules; it looks with disfavor on sanctions which might prevent all the facts and authorized opinions from being presented. This is particularly so where other remedies are available to compensate for a failure to follow rules and schedules.

Significantly, nothing presented to the Court suggests a willful failure to comply with the rules or bad faith on the part of either of the Defendants in making less than the required full disclosure by the deadline. Indeed it appears the City Defendants undertook to secure and exchange the required information as soon as they came to conclude that Plaintiffs had expected and would insist upon timely exchange. (It is concerning that Defendant LeFay did not do likewise.)

There have, indeed, been innocent, good faith delays on both side of the table in this case, to include Plaintiffs' delayed response to overlooked written discovery, delays in consenting to disclosure of medical records, and Plaintiffs' medical facility's insistence upon a particular form of release and delay in releasing the records. To the undersigned it is significant that notwithstanding the delays and frustrations these opposing parties continued to work together and, when necessary, with the Court, to resolve disputes arising therefrom without formal law and motion activity. It seems to the Court that there was, as there should be, particularly in a relatively small, local legal community such as this, a good deal of give and take among the parties. And that, to the undersigned, is significant in that it could lead a reasonable litigant under such circumstances reasonably to believe, like the City's attorney claims, that the strict deadlines and rules would not be literally enforced where there was substantive compliance with them and

obvious prerequisites to compliance had not been met. Certainly, City's counsel should have undertaken to confirm her belief in that regard. Certainly, the Court would not enforce such an unconfirmed "understanding" against an opposing party. However, these circumstances support the Court's conclusion that there was no bad faith or gamesmanship on the part of the Defendants' in failing to exchange their experts written reports.

So the Court then turns to the question of harmlessness, or its corollary, prejudice, and, if there is prejudice, to whether it can be relieved or dealt with via less drastic sanctions than evidence preclusion sanctions.

The Court agrees with the holding and principal espoused in Hogan to the effect that where ones party's expert has the benefit of reviewing an opposing party's expert report before having to prepare his or her own, there necessarily is prejudice — the latter expert is not going to be able to expunge from his mind that which he learned from the other, and it would be impossible to say that what he learned did not influence his opinions.

But here, while both sets of Defendants have designated medical experts, Plaintiffs have not, and so Defendants' medical experts will not have the benefit of reviewing opinions from Plaintiffs' experts.

Defendant City has indeed named a police practices expert and his report was not provided to Plaintiffs until after Plaintiffs' expert had published and provided a copy of his report to Defendant. However, City and its expert have declared under penalty of perjury that the report as belatedly exchanged was drafted without City's expert having considered the Plaintiffs' police practices expert's report. There is nothing before the Court to cause it to question the validity of this representation. Further, the City proposes that if any sanction is to be imposed, it will be sufficient to limit its expert, Joe Callanan, to the opinions reflected in that earlier report and not otherwise respond to or comment on the opinions expressed by Mr. York. The Court is satisfied that such procedures will protect Plaintiffs from the prejudice the Hogan court recognizes would otherwise

1 necessary ensue from the late disclosure.

2 Extending the designation date so as to allow a party to make a delayed 3 exchange will necessarily inconvenience a party who proceeded on the reasonable 4 assumption that all parties would meet specified deadlines. It may be particularly so 5 where a party has scheduled other post-deadline litigation activities in the subject case 6 and other cases, especially where, as here, major holidays intervene. However, 7 Inconvenience falls shy of prejudice.  Schedule juggling, regrettably, is all too common in 8 the litigation arena. Plaintiffs' attorney is recognized as a seasoned and accomplished 9 litigator.  His opponents, or if necessary the Court, allowing him reasonable leeway in 10 scheduling and conducting discovery of the late-designated experts should overcome 11 any prejudice to him or his client. If events prove otherwise, Plaintiffs may seek 12 appropriate relief from this Court.

13 Accordingly, the Court concludes that under all the facts of this case, Defendants' 14 failures to timely designate experts in accordance with the provisions of Rule 26(A) was 15 not and will not be prejudicial to Plaintiffs if:  (1) Defendants make such experts available 16 for Plaintiffs' discovery at times reasonably available to Plaintiffs' counsel; and, City 17 Defendant's expert on police practices, Joseph Callanan, opinions and testimony be 18 limited to that reflected in his written report provided to Plaintiffs' counsel on or about 19 August 29, 2014, and he not respond otherwise to opinions or other statements made by 20 Plaintiffs' expert York in his written report exchanged on or about August 18, 2014.

21 As noted, the Court is concerned with the fact that Defendant LeFay, unlike 22 Defendant City, did not produce a written report immediately upon learning of Plaintiffs' 23 intent to rely on the exchange deadline. The Court anticipates Defendant LeFay's 24 argument that it could not do so with having completed the deposition of Plaintiff.  That 25 argument, if made, would be met with skepticism. Nevertheless, for the reasons set forth 26 above, including the fact Plaintiffs apparently have not designated a retained medical 27 expert, the Court is unable to see how Plaintiffs will be prejudiced if the scheduling order 28 is amended to allow a later disclosure deadline. Plaintiffs retain the right to move to

1  demonstrate actual prejudice and seek relief therefrom.

2  **V.     ORDER**

3  The Court hereby ORDERS:

4  1) that the Scheduling Order is amended so that Defendant City's disclosure of
5  experts Sievert and Callanan and their reports by on or about September 19, 2014, shall
6  be deemed timely;

7  2) that Defendant LeFay's disclosure of expert Terrell shall be deemed timely if
8  his full report is provided within 10 days of the date of this Order;

9  3) that Defendants shall cooperate fully with Plaintiffs' reasonable proposals for
10 scheduling depositions of these experts;

11 4) that Defendants shall pay Plaintiffs their reasonable attorney fees incurred in
12 bringing and arguing these motions; and

13 5) that Defendant City's Motion to Compel is DENIED without prejudice.

IT IS SO ORDERED.

Dated:   November 18, 2014            /s/ *Michael J. Seng*
                                      UNITED STATES MAGISTRATE JUDGE

12