1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          EASTERN DISTRICT OF CALIFORNIA

7

8    SHARRON LE FAY; JEFF WALL;              CASE NO. 1:13-cv-1362  AWI MJS
     SCOTT WALL,
9
                 Plaintiffs,
10                                           MEMORANDUM OPINION AND
                                             ORDER ON DEFENDANTS' MOTIONS
11          v.                               FOR SUMMARY JUDGMENT OR
                                             SUMMARY ADJUDICATION
12   WILLIAM LE FAY; FRESNO POLICE
     OFFICERS ERIC PANABAKER,
13   DARRYLL VAN DDEURSEN and SGT.
     LEN GLEIM; FRESNO POLICE                Doc. #'s 48 & 49
14   DETECTIVE JOHN GOMEZ; CITY OF
     FRESNO and DOES 2 to 10,
15
                 Defendants.
16

17          This is an action for damages by plaintiffs Sharron LeFay ("Sharron"), Jeff Wall ("Jeff")

18   and Scott Wall ("Scott") (collectively, "Plaintiffs") against defendants City of Fresno ("City")

19   William LeFay ("William"),[1] Fresno Police Officers Eric Panabaker ("Panabaker"), Len Gleim

20   ("Gleim"), Darryll Van Deursen ("Van Deursen") and Fresno Police Detective John Gomes

21   ("Gomes") (collectively "Defendants").  The claims set forth in Plaintiffs' First Amended

22   Complaint ("FAC") arise from the seizure of Sharron pursuant to California Welfare and

23   Institutions Code section 5150 (the "5150 Seizure") on September 16, 2012, and from police

24   response (or lack of response) to an incident of alleged domestic or elder abuse that occurred on

25   September 11, 2012.  Plaintiffs' first four claims for relief establish federal subject matter

26   jurisdiction pursuant to 28 U.S.C. § 1331 by alleging seizure without probable cause in violation

27   _____

28   [1]   The parties who share the same last name as another party will be referred to by their first names to avoid
     confusion.  No disrespect is intended.

of the Fourth Amendment, retaliation in violation of the First Amendment, selective enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment, and municipal liability against City pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), respectively. Plaintiff's fifth claim for relief seeks declaratory relief and expungement pursuant to 28 U.S.C. § 2201.  Venue is proper in this court.

## GENERAL BACKGROUND – FEDERAL CLAIM ALLEGATIONS

Plaintiffs' FAC alleges a total of fourteen claims for relief.  The first four claims, as noted, are claims pursuant to 42 U.S.C. § 1983 and the fifth is pursuant to 28 U.S.C. § 2201.  The remainder of the claims are pursuant to California statutory or common law.  Plaintiffs' state law claims include false arrest, battery, elder abuse and violation of California Civil Code section 52.1. Plaintiffs' state law claims also include claims relating to the division or disclosure of personal or community property and relate more closely to proceedings for dissolution of the marriage between Sharron and William currently pending in state court.  Because there has been no motion to dismiss in this case, and because the state law claims outnumber the federal claims and cover issues that would not normally be within the jurisdiction of a federal court, the court is concerned first with the viability of Plaintiffs' federal claims.  For that reason, the court will begin by summarizing Plaintiffs' federal claims as alleged in the FAC and will proceed to assess those claims in light of Defendants' motions for summary judgment or summary adjudication.  Because the court will find that Plaintiffs' federal claims are subject to summary judgment, the court will not proceed to make a determination with regard to Plaintiffs' state law claims but will instead decline to assert supplemental jurisdiction over them.  Similarly, because William LaFay is not a named defendant with regard to any of Plaintiffs' federal claims for relief, his motion for summary adjudication will not be given consideration.

Plaintiffs' first claim for relief is alleged by Sharron against Van Deursen for the 5150 Seizure which Plaintiffs allege was without probable cause and in violation of Sharron's rights under the Fourth Amendment.  The seizure occurred on September 16, 2012.  Plaintiffs allege that Sharron had previously reported an incident wherein William allegedly assaulted Sharron on September 11, 2012, and threatened to harm the careers of her sons by a previous marriage, Jeff

and Scott if they reported the assault.  The FAC alleges Sharron told Scott and Jeff about the assault the following day.  Jeff and Scott are police officers employed by Sacramento Police Department.  Jeff and/or Scott called the Fresno Police Department to report the abuse on the same day – September 12, 2012.  An officer who is unidentified in the FAC responded to Sharron's residence on September 13, 2012.  The FAC alleges the investigating officer filed a general incident report rather than a crime report and failed to take photographs of Sharron's injuries, which Plaintiffs allege were "apparent to anyone who saw her."  Doc. # 17 at 4:14.

The FAC alleges that on September 15, 2012, Sharron "recontacted the police, which resulted in [Panabaker] responding to her residence."  Doc. # 17 at 4:27-28.  Panabaker also saw the injuries that were allegedly evident on Sharron and likewise failed to photograph or document them.  Panabaker's response to Sharron's residence resulted in a second incident report.  The FAC alleges that as soon as Panabaker left Sharron's residence, William returned and threatened to take action against her and her sons.  Sharron again contacted Fresno Police on the following day – September 16, 2012 – and requested that an officer respond to document her injuries and she criticized police for not having done so up to that point.  Plaintiffs allege, "Officer Panabaker's response to [Sharron's] complaint and criticism [regarding non-documentation of her injuries] was inaction, and he did not make arrangements for her injuries to be documented."  Doc. # 17 at 5:13-14.

Defendant Van Deursen responded to Sharron's residence later on September 16, 2012, however he did not respond to Sharron's request for documentation of her injuries; instead he responded to a request by William that Sharron be taken into custody for purposes of psychiatric evaluation pursuant to section 5150.  Plaintiffs allege Van Deursen failed to establish probable cause for the seizure, failed to corroborate William's allegations and failed to investigate the "premise history" which would have revealed a long history of reports of spousal abuse, and failed to appreciate the injuries which substantiated Sharron's version of the facts.  Sharron was taken into custody on September 16, 2012, and was released two days later when Jeff and Scott informed officials that, contrary to William's assertion, they did not concur in Sharron's seizure and commitment for psychiatric evaluation.  The FAC alleges that Sharron was so upset at having

1   been falsely committed for psychiatric evaluation that she suffered a heart attack on the day of her

2   release and required re-hospitalization.  This allegation was later corrected to reflect that Sharron

3   suffered a severe angina attack.

4          The events giving rise to Plaintiffs' second claim for relief arise from the apparently

5   unsuccessful efforts of Jeff and Scott to obtain correction of the alleged errors of Defendants and

6   the eventual "stonewalling" of the entire episode.  The FAC alleges Jeff and Scott complained to

7   the Fresno Police Department on "September 16 or 17, 2012, regarding the aforementioned

8   failures and errors committed by Defendants in failing to properly handle reports of spousal or

9   elder abuse and failure to properly ascertain that probable cause was lacking to subject Sharron to

10  psychiatric examination pursuant to section 5150.  Apparently, the "retaliation" alleged is

11  manifested by the intransigence of the Fresno Police Department.  Plaintiffs refer to the state of

12  affairs as a "retaliatory refusal to assist [P]laintiffs [who] have been subjected to substantial harm

13  by the malicious and calculating [William] LeFay, who has been able to act without risk of any

14  adverse consequences to himself."  Doc. # 17 at 10:11-13.

15         Plaintiffs' third claim for relief is also based on the alleged failure of City and the police

16  officer Defendants to respond properly to Sharron's reports of spousal/elder abuse.  Plaintiffs'

17  third claim for relief alleges Defendants selectively enforced or failed to enforce established

18  procedures in violation of the Equal Protection Clause of the Fourteenth Amendment under a

19  class-of-one theory.  Plaintiffs allege that Sharron's reports of spousal/elder abuse where handled

20  differently that the complaints of similarly situated victims and that police response to requests for

21  remedy were ignored while similar requests from others similarly situated were handled

22  differently.  Plaintiff's Monell claim alleges municipal liability based on official police policy.

23         Plaintiffs' fifth claim for relief pursuant to 28 U.S.C. § 2201 seeks declaratory relief for the

24  expunction of the record of her arrest pursuant to section 2255.

25                                   **LEGAL STANDARD**

26         Summary judgment is appropriate when it is demonstrated that there exists no genuine

27  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

28  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia

1  Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir.

2  1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

3
>       Under summary judgment practice, the moving party always bears the initial
4 > responsibility of informing the district court of the basis for its motion, and identifying
>       those portions of "the pleadings, depositions, answers to interrogatories, and admissions
>       on file, together with the affidavits, if any," which it believes demonstrate the absence of
5 > a genuine issue of material fact.

6  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary

7  judgment always has the initial responsibility of informing the court of the basis for its motion, the

8  nature of the responsibility varies "depending on whether the legal issues are ones on which the

9  movant or the non-movant would bear the burden of proof at trial."  Cecala v. Newman, 532

10  F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  A party that does not have the ultimate burden of

11  persuasion at trial – usually but not always the defendant – "has both the initial burden of

12  production and the ultimate burden of persuasion on the motion for summary judgment."  Nissan

13  Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "In

14  order to carry its burden of production, the moving party must either produce evidence negating an

15  essential element of the nonmoving party's claim or defense or show that the nonmoving party

16  does not have enough evidence of an essential element to carry its ultimate burden of persuasion at

17  trial."  Id.

18        If the moving party meets its initial responsibility, the burden then shifts to the opposing

19  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

20  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities

21  Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280

22  (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party

23  may not rely upon the mere allegations or denials of its pleadings, but is required to tender

24  evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

25  support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11;

26  First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The

27  opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect

28  the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

1  248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

2  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

3  a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc.,

4  818 F.2d 1433, 1436 (9th Cir. 1987).

5        In the endeavor to establish the existence of a factual dispute, the opposing party need not

6  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

7  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

8  trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of

9  summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there

10 is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

11 committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc.,

12 752 F.2d 1401, 1405 (9th Cir. 1985).

13       In resolving the summary judgment motion, the court examines the pleadings, depositions,

14 answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c);

15 Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The

16 evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable

17 inferences that may be drawn from the facts placed before the court must be drawn in favor of the

18 opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,

19 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).

20 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

21 produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight

22 Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

23 **I.  Plaintiffs' Second and Third Claims for Relief**

24       A feature of the proceedings in this action that stands out is the fact that there has been no

25 motion by Defendants up to this point to test the adequacy of Plaintiffs' pleadings by way of a

26 motion to dismiss.  The court will address whether Plaintiffs' second and third claims for relief are

27 sufficient to withstand Defendants motions for summary judgment but sets this consideration apart

28 because the questions presented for analysis with regard to these two claims are primarily legal in

1    nature; not factual.  Thus the extent of the court's reliance on the Parties' undisputed or disputed

2    material facts is relatively less with regard to Plaintiffs' second and third claims for relief that will

3    be the case for Plaintiffs' first and fourth claims for relief.  The court will consider these claims in

4    reverse order.

5              ***A. Plaintiff's Claim for Violation of Fourteenth Amendment on Theory of Class-of-One***

6              Plaintiffs' third claim for relief alleges "Plaintiffs have an equal protection right not to be

7    discriminated against on an individual class basis without any rational and legitimate basis

8    therefore, and this right extends to the provision or non-provision of government service,

9    including law enforcement activity, in an unusual or atypical manner."  Doc. # 17 at 10:23-25.

10   Specifically, Plaintiffs allege that "their well document and credible reports of criminal conduct

11   were disregarded" and that and that Sharron "was also not treated as a similarly situated subject of

12   a [section] 5150 complaint would have been treated."  Doc. # 17 at 10:27-11:1.

13           The lead case establishing an Equal Protection basis for claims for non-enforcement of

14   criminal statutes in this circuit is <u>Ellior-Park v. Manglona</u>, 592 F.3d 1003 (9th Cir. 2010).  The

15   court in <u>Elliot-Park</u> noted that there was no factual dispute that the complaint in that case pled

16   facts "from which a trier of fact could infer racial discrimination."  <u>Id.</u> at 1006.  The court went on

17   to observe:

18           [. . .] while the officers' discretion in deciding whom to arrest is certainly broad, it
             cannot be exercised in a racially discriminatory fashion.  For example, a police
19           officer can't investigate and arrest blacks but not whites, or Asians but not
             Hispanics.  Police cannot discriminate on the basis of the victim's race either.  We
20           recognized as much in *Estate of Macias v. Ihde*, where we held that there is no right
             to state protection against madmen or criminals, but "[t]here is a constitutional right
21           . . . to have police services administered in a nondiscriminatory manner – a right
             that is violated when a state actor denies such protection to disfavored persons."
22           219 F.3d 1018, 1028 (9th Cir. 2000); *see also DeShaney v. Winnegago County
             Dep't of Soc. Servs.*, 489 U.S. 189, 197 n.3 [. . .] (1989).
23

24   <u>Id.</u> at 1006-1007.

25           While case authority has firmly established a cause of action for equal protection claim for

26   police inaction on the grounds of racial discrimination, the same cannot be said for an equal

27   protection claim for police inaction alleged on behalf of a class-of-one.  So far as the court is

28   aware, the Ninth Circuit has not spoken directly to the issue of the availability of an Equal

                                                    7

1    Protection claim based on governmental inaction alleged by a class-of-one.  As Plaintiffs

2    recognize, to prevail on an equal protection claim on a theory of class-of-one, plaintiffs must show

3    they "have been intentionally treated differently from others similarly situated and that there is no

4    rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562,

5    564 (2000) ("Olech").  The extent to which class-of-one claims could be advanced under Olech

6    was limited to a significant extent by the Supreme Court's subsequent decision in Engquist v.

7    Oregon Dep't Agric., 553 U.S. 591 (2008).  In Enquist, the Court found that the Equal Protection

8    Clause will not support a claim based on a class-of-one theory for claims arising in an

9    employment context.  In making this limitation, the Court recognized "[t]here are some forms of

10   state action, however, which by their nature involve discretionary decisionmaking based on a vast

11   array of subjective individualized assessments."  Id. at 603.  The court then reasoned that the day-

12   to-day functioning of a government agency would be undermined if every discretionary act could

13   become a constitutional matter.  See id. at 607 ("we are guided, as in the past, by the "common-

14   sense realization that government offices could not function if every employment decision became

15   a constitutional matter.").

16         So far as this court is aware, the Ninth Circuit has not directly addressed the question of

17   whether, or under what circumstances, an Equal Protection claim on a class-of-one theory may be

18   alleged in the context of police non-action.  District courts in this circuit have generally declined

19   to recognize equal protection claims based on a class-of-one theory under fact similar to those in

20   this case.  In Vinatieri v. Mosley, 787 F.Supp.2d 1022 (N.D. Cal.2011) the District Court

21   determined that a class-of-one equal protection claim was not sustainable where the plaintiff was

22   battered by a landowner with whom he had a longstanding feud and who police had developed a

23   friendship and where police refused to investigate or charge the alleged batterer.  In Vinatieri, the

24   court relied particularly on the example given in Engquist of a hypothetical traffic officer who

25   gives a speeding ticket to one driver but not to another who exceeds the speed limit by the same

26   amount.  Id. at 1030-1031.  The Vinatieri court recognized a type of case exemplified by Seventh

27   Circuit decision in Hanes v. Zurick, 578 F.3d 491 (7th Cir. 2009) in which the officer's

28   discriminatory conduct was alleged and found to be motivated by malice alone, but differentiated

1  Hanes on the basis of a lack of evidence indicating the officer's inaction was motivated solely by

2  malice and by the failure of the plaintiff in Vinatieri to explain "to whom he was similarly

3  situated." Vinatieri, 578 F.3d at 1031.

4        Similarly, this court, in the case of Solis v. City of Fresno, 2011 WL 5825661 (E.D. Cal.

5  2011) found that a class-of-one equal protection claim was not adequately pled where the plaintiff

6  alleged she was subjected to discriminatory prosecution for an act of vandalism on the car of her

7  of estranged husband who happened to be a police officer.  In Solis, the court relied on the holding

8  in Flowers v. City of Minneapolis, 558 F.3d 794 (7th Cir. 2009) for the proposition that "a 'police

9  officer's decisions regarding whom to investigate and how to investigate are matters that

10  necessarily involve discretion.' [Citation.]" Solis, 2011 WL 5825661 at *6 (quoting Flowers, 558

11  F.3d at 799).  The Solis court recognized the holding in Hanes created an opening for a plaintiff to

12  bring a class-of-one equal protection claim under some circumstances but differentiated Hanes on

13  the grounds the plaintiff in Solis had not been repeatedly arrested and therefore had no evidence of

14  the malicious motivation of police conduct and the plaintiff could not articulate a class of similarly

15  situated persons who had been treated differently.  See id. at *7 (a plaintiff must demonstrate a

16  high level of similarity between herself and the group to which she seeks to compare herself).

17        The court has carefully reviewed Defendants' proffer of Undisputed Material Facts and

18  Plaintiffs' objections thereto.  Essentially, what the facts show in a light most favorable to

19  Plaintiffs is that Sharron experienced a long history of verbal abuse preceding the incident of

20  physical abuse complained of.  Various police officers received reports of misconduct by both

21  parties and there were a substantial number of police responses to calls complaining of misconduct

22  by one spouse or the other.  Plaintiffs' equal protection claim arises from a single incident of

23  alleged physical abuse by William against Sharron that occurred on September 11, 2012.  That

24  incident left bruises on Sharron's body that were allegedly apparent upon casual inspection.

25  Plaintiffs' equal protection claim is based entirely on the fact that none of the police officers that

26  responded to the incident or that later interviewed either of the parties or that reviewed the reports

27  made by responding officers arrested William or filed a criminal complaint against him.

28        What is conspicuously absent from the Defendant's proffer of undisputed facts and

1   Plaintiffs' objections, comments and counter-allegations thereto are: (1) any indication that police

2   personnel acted with malice toward Sharron or (2) that there exists a group of similarly situated

3   persons to whom Plaintiffs compare themselves.  Whether or not the bruises on Sharron and her

4   testimony regarding the event were sufficiently compelling to justify William's arrest, there is

5   absolutely no information, other than the police inaction itself, to suggest that the reason William

6   was not arrested was because of police officer malice toward Sharron.  There is, in fact, nothing

7   alleged in the complaint or alleged in Plaintiffs' objections to Defendants' proffer of undisputed

8   material facts to indicate that that Defendants' decision to not arrest William was in any way

9   outside the officer's discretion.  It cannot be the case that every instance of a police decision not to

10  arrest a potential suspect is subject to review on equal protection grounds.

11          Plaintiffs' FAC also alleges an equal protection class-of-one claim arising as a result of

12  Sharron being taken into custody pursuant to section 5150.  That claim fails for the reasons

13  previously mentioned; the FAC does not allege, and the facts do not suggest, that malice against

14  Sharron was a motivating factor in police conduct and Plaintiffs do not describe a class of persons

15  with whom Sharron is similarly situated.  For reasons that will be discussed *infra*, the court will

16  find that Sharron did not suffer a violation of her Fourth Amendment right against unreasonable

17  seizure.  For the present discussion, it is sufficient to note that, in the absence of factual basis for a

18  finding of malice by police officers, Plaintiffs may not allege a claim for violation of equal

19  protection rights.

20          Plaintiff has alleged no facts that elevate police inaction in this case to the level of overt

21  police malice toward a reporting party that was evident in <u>Hanes</u> or in any other case the court has

22  found that permitted a claim for violation of equal protection on a class-of-one theory to proceed.

23  The court concludes that all Defendants are entitled to judgment as to Plaintiffs' third claim for

24  relief.

25          ***B. First Amendment Retaliation***

26          Plaintiffs' second claim for relief alleges retaliation against exercise of First Amendment

    rights of free speech in violation of 42 U.S.C. § 1983.  As set forth in the Ninth Circuit Model Jury

27  Instruction pertaining to First Amendment violation for a "citizen" plaintiff, a First Amendment

28  violation occurs when a defendant, acting under color of law, deters or interferes with the

plaintiff's protected speech.  The concept of retaliation is intended to accommodate the legal fact that a plaintiff need not show that his speech was actually interfered with, he need only show that the defendant's actions caused an injury to the plaintiff because of the plaintiff's speech that would be sufficient to cause "a person of ordinary firmness from continuing to engage in that activity."  Buckheit v. Dennis, 2012 WL 1166077 (N.D. Cal. 2012) at *18.  Stated in the context of a retaliation claim, a plaintiff asserting a First Amendment claim under a theory of retaliation "must show: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendants actions cause the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  Id. (citing Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotations omitted).  However, a plaintiff may not recover merely on the basis of a speculative chill." Rather, a plaintiff must allege discrete acts of intimidation directed solely at dissuading the plaintiff's future exercise of his free speech rights.  See Mendocino Env'tl Ctr. V. Mendocino County, 14 F.3d 457 464 (9th Cir. 1994) ("discrete acts of police surveillance and intimidation aimed solely at silencing" are required to state First Amendment retaliation claim).

With regard to Jeff and Scott, the claim of First Amendment retaliation is based entirely on the failure of police to address their complaints regarding the non-arrest of William and the failure of the police Defendants to adequately remedy their mother's detention pursuant to section 5150. The only retaliatory act alleged by Jeff and Scott against *them* was a comment made by one of the police officers mentioning a police conduct review board.  Plaintiffs' characterize this comment as threatening Scott and Jeff with a police conduct review proceeding.  Defendants allege the actual comment was an innocent remark along the lines of "I wouldn't want to be you if this goes to a police board hearing."  Notwithstanding any disagreements with the content of the remark, the court finds there is no credible threat because Scott and Jeff could not be subject to a police conduct review proceeding in Fresno because they are employed by the city of Sacramento.  There is no indication that Jeff or Scott was or could have been reasonably threatened with a police conduct review proceeding in Sacramento based on their contact with police officers in Fresno.

With regard to Sharron, most of Defendants' conduct that is alleged to be retaliatory relates to Defendants failure to arrest or file a criminal complaint against William.  From a policy perspective, the requirement that police engage in conduct that "would chill a person of ordinary firmness" and the requirement that the adverse action by the defendant be aimed specifically at preventing further First Amendment activity serves the same purpose as the requirement under the

equal protection standard that the police action be motivated by malice. The policy purpose in both cases is to assure that not every instance of the failure of police to do what is requested of them does not become a "federal case." The court therefore takes seriously the requirement for adverse police conduct specifically intended to chill further exercise of free speech rights. The simple failure to police to carry out the desired discretionary act cannot be the basis for a claim of retaliation. Inaction, particularly the non-responsiveness of police officers to Sharron's requests for police intervention in her encounters with her abusive husband, cannot be understood, absent some express threat, to be intended to stifle further protected speech on Sharron's part. To the extent Plaintiffs have alleged that Sharron's detention pursuant to section 5150 constitutes an act of First Amendment retaliation, that claim is dependent on the court's determination of whether the detention was without probable cause in violation of Sharron's Fourth Amendment rights. That analysis follows.

**II. Sharron's Claim for Violation of Fourth Amendment Right**

   *A. Factual Allegations – Parties' Disputed and Undisputed Material Facts*

Plaintiffs' first claim for relief is alleged by Sharron against Defendant Van Deursen for violation of her right against unreasonable seizure under the Fourth Amendment in violation of 42 U.S.C. § 1983. There is no dispute that Van Deursen took Sharron into custody pursuant to section 5150 on September 16, 2014.

On September 16, 2012, William made a 9-1-1 call to report that Sharron was throwing things and threatening to break out the windows of his vehicle. He also stated that stated that Sharron took prescription drugs and kept charging into William's room "screaming and yelling." Defendants' Undisputed Material Fact ("DUMF") # 27. Plaintiffs' dispute the fact by alleging William had contrived the information he called in.[2] Two non-defendant police officers were dispatched to Sharron's residence. The non-defendant officers made no crime report and asked Sharron and William to stay in separate bedrooms. Less than one hour later, William made a 9-1-1 call again. Defendants allege the information that was transmitted to patrol officers, including Van Deursen, stated "Dist . . . male says fem jumped on him . . . related to prior event BK 4720 . . . . Now Fem on phone, says male spit in her face." DUMF # 29. Van Deursen alleges in his declaration that received the information at or about 9:41 p.m. Van Deursen states that "at some

---

[2]     Plaintiffs did not file a separate list of disputed material facts. Rather, Plaintiffs have disputed all but a very few of Defendants' DUMFs and have, in many cases, added an extensive factual counter-narrative. Except as noted in the discussion, Plaintiffs' disputes with Defendants' DUMFs regarding Van Deursen's conduct are disputes as to the truth of the information given to Van Deursen by William. What William actually told Van Deursen, whether truthful or not, is generally not disputed.

point during the handling of this call, I learned [of] the "prior event" (BK 4720) referenced in the dispatch synopsis [. . .] relating to an incident that occurred approximately one hour prior to my arrival." Doc. # 48-3 at 2:19-21. Thus, it is not disputed that Van Deursen knew of William's prior call reporting that Sharron took prescription drugs and was running around screaming yelling as well as the information contained in the call to which he was responding. Again, Plaintiffs dispute the accuracy of what Van Deursen was told, but do not dispute that he had been so informed prior to arriving at the scene.

Van Deursen states that upon arrival he took separate statements from both William and Sharron. Plaintiffs' primary contention with regard to Van Deursen's interview with William and Sharron is that Sharron reports that she did not have an opportunity to say everything she needed to say to explain the situation. The proffered undisputed facts that are pertinent to claims regarding Van Deursen's conduct in deciding to place Sharron in custody pursuant to section 51560 are set forth at numbers 32 through 46, inclusive. Although Plaintiffs dispute the truth or accuracy of essentially all the facts Van Deursen acted upon, the court's review of both Defendants' UMF's and Plaintiffs' objections thereto leads the court to the conclusion that an officer in Van Deursen's place would have had ample reason to conclude that:

(1)  Sharron was easily agitated when questioned about her own health, medications, medical history; and appeared to be focused on the belief that William had repeatedly stolen her purse (which Sharron could not describe) and she harbored a belief that William was trying to poison her.

(2)  Sharron could not adequately describe her nutritional or hydration status. Plaintiffs contend that Van Deursen did not understand what Sharron said or failed to give Sharron adequate time to explain, but the fact remains that Sharron did not appear able to give a clear, short and concise answer to the questions regarding her nutrition and hydration.

(3)  Van Deursen was informed by Sharron that she was under medication for a painful condition and that she had a history of depression.

(4)  Van Deursen states in his declaration that Sharron appeared to him to have a body odor indicating poor hygiene and to be clothed in a dirty nightgown. Van Deursen also states that, based on his knowledge as a former paramedic, Sharron appeared to him to be either undernourished or dehydrated or both. Plaintiffs contend that evidence exists to support an observation that Sharron was not in a state of poor hygiene or that she was not undernourished or dehydrated. However, it is the court's conclusion after review of the proffered facts and the objections that Plaintiffs have not adduced any evidence that would

13

indicate that Van Deursen's observations and conclusions were unreasonable or that he was deliberately or clearly erroneous.

**B. Discussion**

The lawfulness of a detention under section 5150 is measured by Fourth Amendment standards.  See Maag v. Wessler, 960 F.2d 773, 775 (9th Cir. 1992) (holding seizure of suspected mentally ill person for psychiatric evaluation is "analogous to a criminal arrest and must therefore be supported by probable cause").  "To constitute probable cause to detain a person pursuant to section 5150, a state of facts must be known to the peace officer . . . that would a person of ordinary care and prudence to believe or to entertain a strong suspicion, that the person detained is mentally disorder and is a danger to himself or herself or is gravely disabled."  People v. Triplett, 144 Cal.App.3d 283, 287-288 (1983) ("Triplett").  "Gravely disabled" means "[a] condition in which a person, as a result of a mental disorder, is unable to provide for his or her basic personal needs for food, clothing or shelter."  See Cal. Welf. & Inst. Code § 5008 (h)(1)(A).  A determination as to probable cause "must be decided on the facts and circumstances presented to the officer at the time of the detention."  Triplett, 144 Cal.App.3d at 288.  A peace officer need not make a medical diagnosis; "it is sufficient if the officer, as a lay person, can articulate behavioral symptoms of mental disorder, either temporary or prolonged."  Id.  Generally, a sufficient showing can be made where "a person's thought process, as evidenced by words or actions or emotional affect are bizarre or inappropriate for the circumstances."  Id.

Plaintiffs' primary contention is that Van Deursen could have gathered more information, could have researched other sources of information and, overall, that a more comprehensive and exhaustive approach by Van Deursen might have led to a better outcome for Sharron.  The issue at bar, however, is whether Defendants have succeeded in presenting undisputed facts sufficient to show there is no issue of material fact that Van Deursen did not violate Sharron's Fourth Amendment rights when he took her into custody pursuant to section 5150.  To say that an officer could have performed an act better, with more information or that a more favorable outcome could have eventuated under the same facts is not to say that the officer's conduct rises to a level of constitutional violation.  In this case, the court finds that Plaintiffs have failed to establish any issue of material fact remains as to whether Van Deursen did violate Sharron's Fourth Amendment right against unreasonable seizure.

To the extent that facts can be derived from Plaintiffs' objections to Defendants' UMF's those facts are, at best, only sufficient to show that the facts Van Deursen had at his disposal were ambiguous.  It is hypothetically possible that a different officer having access to the same set of

facts *might* have concluded that an evaluation under section 5150 was not warranted.  However, what is critical to Plaintiffs' opposition to Van Deursen's motion for summary judgment is any evidence that the officer deciding *not* to take Sharron into custody would definitely have made the right call.  While the taking of a person into custody for the purpose of mental or medical evaluation requires probable cause just as would be the case for an arrest, the public policy considerations in the case of obtaining mental or medical evaluation militate in favor of a somewhat more lenient notion of what constitutes probable cause.  Van Deursen was confronted with a report of radically aberrant behavior and could not elicit from the Sharron information to make a clear and rapid determination that Sharron the capacity to see to her own nutrition, hydration and hygiene.

The consequences of a failure to take a subject in for evaluation if he or she were truly incapable of caring for themselves or was a danger to others is potentially very dire.  Conversely, the consequence of erroneously taking a subject into custody when he or she is in fact competent is, at worst, in a circumstance that is intended to be readily corrected by the initial medical screening function that is mandated by section 5151.  Section 5151 of the Welfare and Institutions Code provides that "[p]rior to admitting a person to the facility for a 72-hour treatment and evaluation pursuant to Section 5150, the professional person in charge of the facility or his or her designee shall assess the individual in person to determine the appropriateness of the involuntary detention."  Id.  The court finds it significant that Plaintiffs have not alleged that the initial examination determined that involuntary detention for further evaluation was not warranted.  Plaintiffs objections to the Defendants' proffered UMF's attempt to point out the limitations of observations made by medical responders or hospital staff who had contact with Sharron, but offer no affirmative evidence that the observations made by Van Deursen were erroneous, or contrived.  This absence of evidence affirmatively in opposition to Van Deursen's testimony is fatal to Plaitniff's opposition to Defendants' motion for summary judgment.

The court finds that Van Duersen had probable cause to take Sharron into custody for the purpose of a medical and mental examination.  Plaintiff's opposition fails for the simple reason Plaintiffs have provided no evidence that Van Duersen did not hear what he reported he heard from William and did not make the observations that he reportedly made regarding Sharron's condition, or that he did not converse with Sharron and did not have difficulty eliciting a clear and concise explanation of Sharron's condition from Sharron.  As noted above, Plaintiffs' opposition consists primarily of assertions that further conversation with Sharron might have produced a clearer picture, or that conversation with other witnesses might have given a more balanced

insight, or that Van Duersen should have known that parties undergoing a bitter divorce proceeding tend to lie about one another.  Courts do not impose a requirement of exhaustion of information gathering efforts on police officers who are charged with making rapid decisions on the scene.  Even less so where the stakes involve the mental and/or medical welfare of the subject.  The court finds that Plaintiffs' argument that that Van Deursen could have gathered more information and that he might have come to a different conclusion had he done so is not sufficient to create an issue of material fact as to the existence of probable cause to take Sharron into custody.  The court therefore finds Van Deursen is entitled to summary judgment as to Plaintiffs' first claim for relief.

**III.  Plaintiffs' Claim for Municipal Liability Pursuant to <u>Monell</u>**

Plaintiffs' fourth claim for relief alleges liability against the City of Fresno by all Plaintiffs. Generally, a governmental entity is liable only for the actions of "its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  <u>Monell v. Dep't of Soc. Services</u>, 436 U.S. 658, 694 (1978).  To impose liability against a county for a violation of constitutional rights on the basis of official policy or procedure, a plaintiff must show: (1) that plaintiff was deprived of a constitutional right; (2) that the municipality had a policy; (3) that this policy amounted to deliberate indifference of plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation."  <u>Sepatis v. City and County of San Francisco</u>, 217 F.Supp.2d 992, 1005 (N.D. Cal. 2002).  (citing <u>Plumeau v. Sch. Dist. #40 County of Yamhill</u>, 130 F.3d 432, 438 (9th Cir. 1997).  Plaintiffs' fourth claim for relief fails because Plaintiffs have failed to show that there remains any issue of material fact as to any claim for constitutional violation as set forth in Plaintiffs' first three claims for relief.  Since Defendants are entitled to summary judgment as to Plaintiffs first three claims for relief; Defendants are entitled to summary judgment as to the fourth claim for relief as well.

**IV.  Plaintiffs' Fifth Claim for Relief – Declaratory Relief to Expunge**

Plaintiffs' fifth claim for relief seeks declaratory relief against City in the form of a declaration from this court that "on the factual transactions underlying this proceeding, her arrest

was unconstitutional and should be expunged." Doc. # 17 at 12:5-6.  Defendants seek summary judgment on Plaintiffs' claim for declaratory relief on the ground the request is moot at present. Plaintiffs' opposition does not address Defendants' contention with regard to their fifth claim for relief.  While the court does not disagree with Defendants' contention, the court will find that summary judgment as to Plaintiffs' fifth claim for relief is appropriate for two separate reasons. First, as the party bearing the burden to establish both a legal and factual basis for their claim for declaratory relief, Plaintiffs have failed to show that the taking of a person into custody for the purpose of mental or medical evaluation is an "arrest" within the meaning of any statute or legal authority that can be legally "expunged."  The court has not researched the matter exhaustively, but at least cursory examination fails to disclose that a taking into custody under section 5150 is an "arrest" for purposes of seeking to expunge a record, or on what grounds such an order can be made.  In general, California law permits expunction of records for "arrest" for violation of criminal statutes under certain circumstances in order to provide relief from the legal impediments that such a record imposes.  Plaintiffs have provided no information to indicate that the taking of a person into custody for the purposes of medical/mental evaluation leaves any publically retrievable record, or that it imposes any form of legal impediment afterward.

Second, the Ninth Circuit has found that district courts lack jurisdiction to make orders regarding the expunging of criminal records, including records of arrest, where the relief would be based solely on equitable considerations.  See United States v. Sumner, 226 F.3d 1005, 1014 (9th Cir. 2000) ("In our view, a district court's ancillary jurisdiction is limited to expunging the record of an unlawful arrest or conviction, or to correcting a clerical error").  Since, in this case, the court has found there was no constitutional or statutory violation or clerical mistake; any order this court might make regarding the expunging of any records regarding Sharron's 5150 hold would be based solely on equitable considerations.  The court therefore lacks jurisdiction to address Plaintiffs' claim for declaratory relief.

1    Based on the foregoing, the court concludes that Defendants are entitled to summary

2  judgment as to Plaintiffs' fifth claim for relief.

3  **V.  Maintenance of Jurisdiction Over Non-Federal Claims for Relief**

4    The court has found that Defendants have adequately demonstrated the absence of any

5  material fact as to their liability with regard to Plaintiffs first through fifth claims for relief.  These

6  are the only claims asserting violation of federal statutory or constitutional law.  What remains to

7  be decided is the court's exercise of jurisdiction over Plaintiffs' state law claims.  Pursuant to Rule

8  1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims

9  where "the district court has dismissed all claims over which it has original jurisdiction."  Id.

10  "With respect to supplemental jurisdiction in particular, a federal court has subject-matter

11  jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. See

12  [F.R.C.P.] §§ 1367(a), (c).  A district court's decision whether to exercise that jurisdiction after

13  dismissing every claim over which it had original jurisdiction is purely discretionary."  Carlsbad

14  Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009).  Generally, the exercise of jurisdiction over

15  state law claims when all federal claims have been dismissed should be the exception, not the rule.

16  See United Mineworkers v. Gibbs, 383 U.S. 715, 726-727 (1966) (exercise of supplemental

17  jurisdiction should be rare).  The decision to exercise supplemental jurisdiction over pendant state

18  law claims is informed by the values of judicial economy, convenience, fairness and comity.  See

19  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (citing values to be considered from

20  Gibbs).

21    Of the values district courts are instructed to consider, the value of comity looms largest by

22  far in this case.  The state law claims in this action involve issues that are intimately entwined

23  with, or reasonably may be expected to arise in, the action for dissolution of marriage currently

24  pending before the state Superior Court.  Family law is "an area that has long been regarded as a

25  virtually exclusive province of the States."  Sousa v. Iowa, 419 U.S. 393, 304 (1975).

26  Fundamentally, Plaintiffs' state law claims (exclusive of Plaintiffs' eighth claim for relief for false

27  arrest against Van Deursen) are claims against William for violations of Sharron's personal and

28  property rights under state law.  It is difficult to see how this court could provide relief with regard

to Plaintiffs' property or personal claims without intruding on the jurisdiction of the Superior Court in the dissolution action or in related state court actions.  This court will therefore decline to assert jurisdiction of Plaintiffs' remaining state law claims and will dismiss same without prejudice.

THEREFORE, in accord with the foregoing discussion, it is hereby ORDERED that Defendants' motion for summary judgment as to Plaintiffs' first, second, third, fourth and fifth claims for relief is hereby GRANTED.  The clerk of the court shall enter judgment as to these claims in favor of Defendants.  The court hereby DECLINES to exercise supplemental jurisdiction over Plaintiffs' state claims for relief numbered six through fourteen, inclusive.  Claims six through fourteen are hereby DISMISSED without prejudice.  The Clerk of the Court shall CLOSE THE CASE.  Any dates currently set for further proceedings in this case, including trial dates and hearing dates associated with any scheduled trial are hereby VACATED.

IT IS SO ORDERED.

Dated:   January 6, 2015        _____

SENIOR  DISTRICT  JUDGE

19